# Miller *versus* Ruble and Wife.

107  395
170   70
107  395
194  212

1. Signing by the grantor is essential to the validity of a deed conveying real estate: McDill v. McDill, 1 Dallas 63, followed.

2. Under the Act of February 24th, 1770 (P. L. 376), providing the mode in which the separate real estate of a married woman may be conveyed, both husband and wife must sign as well as seal, acknowledge, and deliver the deed. Said Act is not repealed or modified in this respect by the Act of April 11th, 1848.

3. A deed purporting to convey real estate of a married woman, wherein she and her husband were named as grantors, was prepared by the scrivener with scroll seals, and with a form of acknowledgment by husband and wife. The wife signed it, opposite one of the seals, but the husband omitted to do so. Both husband and wife acknowledged the deed, and it was duly delivered:
   *Held*, that the deed passed no title to the grantee.

October 20th, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J. absent.

ERROR to the Court of Common Pleas of *Washington county*: Of October and November Term, 1884, No. 38.

Ejectment, by William L. Ruble and Elmira Ruble his wife, in her right, against James M. Miller, and Bailey and Brundage (the two latter being tenants in possession under Miller),

[Miller *v.* Ruble and Wife.]

to recover the undivided fourth part of a tract of land in East Bethlehem Township. Plea, not guilty.

On the trial, before HART, P. J., it was admitted that Aaron Horton died intestate February 27th, 1866, seised of the tract in question, leaving to survive him as his heirs-at-law four children: Thomas, Christopher, Mary Ann (wife of William Fisher), and Elmira (wife of William L. Ruble), to whom the said tract of land descended in equal undivided fourth parts. This was the plaintiff's title.

The defendant, for the purpose of proving that the title of the plaintiff, Mrs. Ruble, had been conveyed to her brother, Thomas Horton (through whom the defendant claimed), offered in evidence a deed, dated September 27th, 1867, of William L. Ruble and Elmira his wife, and others, to Thomas Horton, for the tract in question.

Objected to, because the deed, purporting to convey the separate estate of Mrs. Ruble, a married woman, is not signed by William L. Ruble, her husband.

The deed appeared to have been prepared by a scrivener in the usual form, naming in the premises as parties of the first part and grantors, William Fisher and Mary Ann his wife, William L. Ruble and Elmira his wife, and Christopher Horton and Sarah Ellen his wife. Thomas Horton was party of the second part and grantee.

The attestation, execution, and acknowledgment of said deed was as follows:—

"In testimony whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

| Signed sealed and de-livered in presence of J. W. QUAIL. W. H. DALBY. | MARY ANN FISHER. | [SEAL.] |
| | ELMIRA RUBLE | [SEAL.] |
| | CHRISTOPHER HORTON. | [SEAL.] |
| | SARAH ELLEN HORTON. | [SEAL.] |
| | | [SEAL.] |
| [These seals were ink-scrolls.] | | [SEAL.] |

WASHINGTON COUNTY, PENNA. *ss.*

Before me the subscriber one of the Commonwealth Justices of the Peace in and for said county personally [SEAL.] came William Fisher and Mary Ann his wife, Wiliam L. Ruble and Elmira Ruble his wife, Christopher Horton and Sarah Ellen his wife, who severally acknowledged the within instrument of writing to be their act and deed for the purposes therein set forth and desired the same might be recorded as such. The said Mary Ann, Elmira and Sarah Ellen being of lawful age and by me

[Miller *v.* Ruble and Wife.]

examined separate and apart from their said husbands, the full contents of the foregoing deed being first made known to them declared they signed and delivered the same without any compulsion from their said husbands.   Witness my hand and seal the day and year first above written.

J. W. QUAIL, J. P.   [SEAL.] "

The entire body of the deed, and the form of acknowledgment, and apparently the ink-scroll seals were in one handwriting.

The court sustained the plaintiffs' objection to the offer, and excluded the deed as evidence.

Evidence of mesne profits was admitted, and the court submitted that question to the jury, instructing them to find a verdict for the plaintiff for the undivided fourth of the land in dispute, with such damages as they should find, etc.

Verdict accordingly for the plaintiffs.   The defendant took this writ, assigning for error the exclusion of said deed.

*Dougan* and *Todd*, for the plaintiff in error.—At common law signature of a grantor was not essential, the seal evidenced the execution : Williams on Real Property (3d Am. ed.) 142; 2 Washburne on Real Property, 575, 593; 3 Preston on Abstracts of Title, 61; Maule *v.* Weaver, 7 Barr 329; Hoffman *v.* Bell, 11 P. F. S. 451; Broome and Hadley Commentaries, vol. i. p. 733; 2 Hilliard on Real Prop. 279; Wright *v.* Wakeford, 17 Ves. 454; Aveline *v.* Whisson, 43 E. C. L. R. 414; Taunton *v.* Pepler, 6 Madd. 166.   The Statute of Frauds has not changed the common law rule.   The language of the first section of the Act of March 21st, 1772 (1 Sm. Laws, 389), is the same as that of the first section of the English Statute of Frauds. The estates, etc., which must be "put in writing and signed by the parties so making the same," are those "made and created by livery and seisin only, or by parol."   The instrument here offered was under seal; the estate created was not made by livery and seisin only or by parol, and hence the deed was not obnoxious to the Statute of Frauds: Maule *v.* Weaver, 7 Barr 329; Cooch *v.* Goodman, 42 E. C. L. R. 817; Cherry *v.* Heming and Needham, 4 Exch. 631; Brown on Statute of Frauds 11; 3 Preston on Abstracts of Title, 61; Williams on Real Prop. 142; Smith on Contracts 5; Parsons on Contracts note *e*, 113.

*Boyd Crumrine* (*John H. Murdock* with him), for the defendant in error.—Long prior to the common law signing as well as sealing was essential to a conveyance of real estate: Jeremiah xxxii. 9, 10, 14.   In early English times people generally

and even the kings, could not write, and the individual seal of the grantor impressed in wax was in effect his signature. Even the names of the witnesses were written by the scrivener, because the witnesses could not write : 1 Reeves's Hist. of Eng. Law, 20, 21 ; note *a*, 140, 144. *Tempora mutantur ;* now the seal is nothing ; when a mere scroll, generally printed, seals are all alike, and the authenticity depends on the signature, and the seal, though required as a mere form, has become of so little relative importance that anything will answer for it : 3 Preston, Abs. Title, *62.

The time never was in Pennsylvainia when an [L. S.] without a signature was a sufficient execution of a deed. In the Duke of York's Laws, 1676, the requisites of a conveyance of real estate were, inter alia, that it be by "Deed in writing *under hand and seal.*" (D. of Y. L. 23.) The Provincial Law of Pennsylvania, March 10th, 1683, chap. lxxviii. provided a short form of deed," for avoiding long and tedious conveyances," ending "In witness whereof hee setts *his hand and Seal. . . . . .* Acknowledged in open court, etc." (Id. 131.)

The earliest case we have in our courts upon the subject is McDill *v.* McDill (1 Dall. 63), tried before McKean, C. J., 1782. It was held, " the signing of a deed is now the material part of the execution ; the seal has become a mere form, and a written, or ink seal, as it is called, is good." In Liggett *v.* Long, 7 Har. 499, the deed under which the defendant in an ejectment defended was unsigned, but sealed ; it was rejected as evidence of title, but was admitted as evidence of a sale on which to found a claim for improvements by defendant. In Watson *v.* Jones, (4 Nor. 117) Justice Gordon said : " Technically there can be no deed without a seal, for it is the seal which makes the deed ; nevertheless we well know that a valid conveyance of land may be made without it [that is, an actual seal]. As long ago as McDill *v.* McDill, (1 Dall. 63), it was held that the signing of a deed was the material part of its execution, and that the act of sealing had become a mere form." Thus the "seal" of to-day does not answer the purpose of the impressed wax of the olden time ; still it is held sufficient for compliance with form, because a signing is now required from which when subscribed and authenticated the actual sealing may be presumed : Long *v.* Ramsay, 1 S. & R. 73 ; Miller *v.* Binder, 4 Cas. 489. The Statute of Frauds requires the signing as well as the sealing. That statute requires such signature in the following among other cases : the assignment, grant or surrender of all leases, estates, or interests in lands, tenements, and hereditaments, not being copyholds. This certainly seems to include all assurances by deed, though the opinion that it does so is by no

[Miller v. Ruble and Wife.]

means universal: Cooch v. Goodman, 2 Q. B. 580; Aveline v. Whisson, 4 M. & G. 801 ; Tupper v. Foulkes, 9 C. B., N. S. 797; Ellis v. Smith, 1 Ves. Jr. 13. A deed purporting to convey the separate estate of a married woman in Pennsylvania must be executed in conformity with the Act of February 24, 1770 (Purd. Dig. 460, pl. 13), which provides that to dispose of and convey the estate of the wife in lands, "it shall and may be lawful for the said *husband and wife* to *make*, seal deliver and *execute* any grant, bargain and sale, lease, release, feoffment, deed, conveyance, or assurance in the law whatsoever . . . . . and after *such execution to appear* . . . . . *and to acknowledge* the said deed or conveyance, etc.," followed by the separate examination of the wife. "Our statutory provision for a wife's conveyance by joinder with her husband, and acknowledgment on separate examination, is a substitute for a fine, by which alone the common law allowed her to part with her land." GIBSON, C. J., in Schrader v. Decker, 9 Barr, 14. The separate deed of a married woman conveying her real estate is void, even though her husband had previously deserted her. And the Act of 1848 confers no power upon a feme covert to convey unless her husband join in the deed: Thorndell v. Morrison, 1 Casey 326; Pettit v. Fretz, 9 Id. 118; Trimmer v. Heagy, 4 Harris, 484; Peck v. Ward, 6 Id. 506; Dunham v. Wright, 3 P. F. S. 167.

Chief Justice MERCUR delivered the opinion of the court, November 13th, 1884.

It is true at an early day in England signing was not considered essentially necessary to the validity of a deed. It is not stated as one of the things necessarily incident to a deed at common law: Co. Litt. L. 1, C. 5, Sec. 40, 35 b. A due sealing thereof was deemed a sufficient execution. This, however, was by reason of a very general inability to read or write: 1 Reeves's Hist. of Eng. Law 184, in note. In 1 Blackstone's Com. 305, it is said to be requisite that the party whose deed it is should "seal, and now, in most cases, I apprehend should sign it also." He proceeds to state that under Saxon rule seals were not of much use in England. Their method, for such as could write, was to subscribe their names, and whether they could write or not to affix the sign of the cross. On the conquest by the Normans they introduced waxen seals only, instead of the English method of writing their names and signing with the sign of the cross. These seals, however, generally had specific devices to distinguish them from each other.

The Statute of 29 Charles II. and the first section of our Act of 21st March, 1772, indicated a necessity that all transfers of

land should be put in writing and be signed by the parties making the same. This was deemed necessary for the prevention of frauds and perjuries. Our Act makes no reference to a seal for the purposes therein mentioned, but requires the writing to be signed.

It was, however, held more than one hundred years ago that the signing of a deed was a material part of the execution thereof, and that the seal had become a mere form, and a written or ink seal, as it was called, was good: McDill *v.* McDill, 1 Dall. 64. The sufficiency of such a form of seal, when the deed is signed by the maker, was affirmed in Long *v.* Ramsay, 1 S. & R. 72. It is true in Maule *v.* Weaver, 7 Barr 329, Mr. Chief Justice GIBSON did say that he did not entirely concur in what was said in those cases, that the signing of a deed was the material part of its execution, yet he admitted it to be the most powerful evidence of the joint or separate ensealing thereof. In that case, however, the question was whether covenant could be maintained against the grantee in a deed when he had neither signed nor sealed it, but it concluded, "in witness whereof the said parties have hereunto interchangeably set their hands and seals the day and year first above written," and was signed and sealed by the grantor alone.

In Leggett *v.* Long, 7 Harris 499, a Treasurer's deed was held sufficiently executed where he had omitted to write his signature near the printed impression of a seal, but had put it on the deed to a receipt for the taxes and costs and for the bond, for the surplus purchase money, and had also acknowledged the deed in open court, which acknowledgment was entered on the records of the court, and duly certified on the deed.

Cases may undoubtedly be found in which judges of this court have cited English authorities to prove that at common law, irrespective of Statute, signature was not essential to a deed. Hoffman *v.* Bell, 11th P. F. Smith 444, cited by counsel for plaintiff in error, is one of them. That case, however, was not ruled on the validity of a deed sealed and not signed, but on the fact that the evidence failed to prove that any deed had been delivered or executed.

The great industry and careful search of counsel have not resulted in his being able to cite a case, since McDill *v.* McDill, in which it was held by this court, on a direct presentation of the question, that a deed professing to convey land was sufficiently executed without any signature of the vendor. On the contrary, in Watson *v.* Jones, 4 Norris 117, McDill *v.* McDill is cited approvingly by Mr. Justice GORDON. The recognition of any rule which dispenses with the necessity of

the signature of the grantor would be fraught with great mischief. Aided by a pliant Justice of the Peace, or by a false personation before an honest one, it would provide a convenient way to rob a man of his land without the trouble and danger of forging his signature.

The case now before us relates to the question of what is necessary to make a valid conveyance of the real estate of a married woman. This is to be determined by the Statute, without which it could not be done.

Section 2 of the Act of 24th February, 1770, declares when husband and wife desire to convey the estate of the wife in any lands, it shall be lawful for them to make, seal, deliver and execute a deed for the same, and after such execution to appear before a Judge of the Supreme Court, or Justice of the Common Pleas of the county in which the land lies, and acknowledge the same. This Act requires both husband and wife to join in the conveyance to pass the real estate of the latter. Its directions are imperative : Trimmer *v.* Heagy, 4 Harris 484. What specific acts must they both do ? The Statute answers, " make, seal, deliver, execute and acknowledge the deed." Sealing and delivering are not the only requisites which must precede the acknowledgment. They must first make the deed. This clearly imports the signing thereof. Until that is done it would be a forced construction of this language to say they had made a deed. The manifest meaning of this word, in the connection in which it is used, is that the deed shall be duly prepared, and be signed by them. The sealing is referred to as a separate act.

The Act of 1848 does not repeal or change the Act of 1770 so as to dispense with the necessity of both joining in the deed to convey the real estate of the wife : Peck *v.* Ward, 6 Id. 506 ; Ulp *v.* Campbell, 7 Id. 361. The Act of 1848 confers no power upon a feme covert to make a valid conveyance of her real estate unless her husband joins in the deed : Thorndell *v.* Morrison, 1 Casey 326 ; Stoops *v.* Blackford, 3 Id. 213 ; Glidden *v.* Strupler, 2 P. F. Smith 400 ; Dunham *v.* Wright, 3 Id. 167. She has no capacity to contract for the sale of her real estate, nor to convey it otherwise than in the precise statutory mode conferring the power : Innis *v.* Templeton, 14 Norris 262.

While several Acts since that of 1770 have conferred upon other officials the power of taking the acknowledgment of a deed conveying the real estate of a wife, yet no one has changed the form of its execution, nor dispensed with the necessity of its being made by both husband and wife.

As the deed offered in evidence showed Mrs. Ruble to be a married woman when it was executed, and her husband did

11 OUTERBRIDGE.—26

not unite with her in its execution, it was insufficient to pass her real estate, and the learned Judge committed no error in rejecting the evidence.

Judgment affirmed.